UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FLORENTINO FRANCO SANCHEZ,

    Plaintiff,

  v.                                                                Case No. 21-CV-1442-SCD

KILOLO KIJAKAZI,
  *Acting Commissioner of the Social Security Administration,*

    Defendant.

## ORDER DENYING DEFENDANT'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT

      In 2020, Florentino Franco Sanchez applied for disability insurance benefits under Title II of the Social Security Act, claiming that he became disabled and unable to work in 2019 due primarily to depression and anxiety. The Commissioner of the Social Security Administration denied the application, and, after a hearing, an administrative law judge found Franco Sanchez could still work despite several mental limitations. Franco Sanchez sought judicial review of that decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in evaluating the medical opinion evidence and in assessing the intensity and persistence of his alleged symptoms. On January 13, 2023, I issued a decision and order concluding that the ALJ failed to provide an adequate reason for finding unpersuasive the opinions of Franco Sanchez's psychiatrist (Jay Winston, DO) and psychotherapist (Michael Bortin, LPC). *See* ECF No. 17. Because the record did not reveal any other conceivable reason for rejecting the treatment providers' opinions, and because the vocational expert testified that such opinions (if adopted) would be work preclusive, I reversed the Commissioner's decision and remanded

the matter with instructions that Franco Sanchez's application for disability benefits be granted. Judgment was entered that same day. *See* ECF No. 18.

On January 25, 2023, Kilolo Kijakazi—the Acting Commissioner of the Social Security Administration—filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See* ECF No. 19. "Rule 59(e) motions offer district courts an opportunity to correct errors that may have crept into the proceeding, before the case leaves the district court for good." *Sosebee v. Astrue*, 494 F.3d 583, 589 (7th Cir. 2007). "A Rule 59(e) motion will be successful only where the movant clearly establishes: '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

Kijakazi contends that I misapplied controlling precedent when I remanded to award benefits rather than for further proceedings. "When a reviewing court remands to the Appeals Council, the ordinary remedy is a new hearing before an administrative law judge. In unusual cases, however, where the relevant factual issues have been resolved and the record requires a finding of disability, a court may order an award of benefits." *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) (collecting cases). The record requires a finding of disability only when the evidence is so lopsided that it "can yield but one supportable conclusion"—that the applicant qualifies for disability benefits. *See Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020)

2

(quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

Kijakazi argues that I ignored evidence other than the opinions of Dr. Winston and Bortin that could yield a conclusion that Franco Sanchez was not disabled. She points to two mental status examinations from October 2019 that she says were almost entirely within normal limits. During an appointment early that month with Dr. Winston, Franco Sanchez had a normal mood, an appropriate affect, and no other abnormalities. *See* R. 350. Franco Sanchez met with his therapist the following week. At that appointment he was groomed, displayed good eye contact, had normal motor activity, was friendly and cooperative, had clear speech, was fully oriented, exhibited adequate concentration and attention (despite complaining of difficulties concentrating), had intact judgment, had fair insight, displayed an appropriate affect and an anxious mood, did not exhibit any suicidal thoughts, had coherent thought flow, and did not exhibit any hallucinations or delusions. *See* R. 335.

As I already explained in my decision reversing the Commissioner's decision, none of the above findings is materially inconsistent with an individual who suffers from disabling mental fatigue. *See* ECF No. 17 at 14–16. I also explained that Franco Sanchez's demeanor during those exams—which were limited in time, with trusted providers, and in a controlled and predictable setting—was a poor indicator of how he'd behave in a competitive work environment. *See id.* at 16–18. Kijakazi latches on to a single sentence in my nineteen-page decision where I suggested it was "*possible* that there is an inconsistency" between the exam findings and the opinions of Dr. Winston and Bortin. *Id.* at 15. But elsewhere in the decision I clearly stated that the mental status exams did not conflict with the treating providers' opinions. *See id.* at 14 (concluding that "there really aren't any" actual and material inconsistencies between the records and the providers' opinions), 17 (finding that the

3

treatment records cited by the ALJ "are not actually contradictory").

The only other potentially conflicting evidence Kijakazi cites are the prior administrative medical findings of the state-agency reviewing psychologists, Robert Barthell and Jan Jacobson. The Seventh Circuit has held, however, that "[a] contradictory opinion of a non-examining physician does not, by itself, suffice as a justification for discounting the opinion of the treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). Thus, absent other contradictory evidence in the record, the findings of Dr. Barthell and Dr. Jacobson—two psychologists who never treated or examined Franco Sanchez—cannot justify rejecting the well-supported opinions of Franco Sanchez's treating mental health providers. Kijakazi is unable to point to any other contradictory evidence.

Moreover, Kijakazi has not demonstrated that the reviewing psychologists' findings are contrary to a finding of disability. Both reviewing psychologists found that Franco Sanchez had a moderate limitation in each of the four paragraph B criteria. *See* R. 66, 82. As for specific functional limitations, both found that Franco Sanchez could remember, understand, and carry out two-step commands involving simple instructions; would be able to focus to complete tasks requiring two to three steps but would have increasing difficulty with more complex tasks; and may have problems at times with completing a normal workweek, but not on a frequent basis. *See* R. 68–69, 85–87. They also found that Franco Sanchez would have some difficulty being around people for an extended period of time; would do better in jobs that did not require frequent public contact; should be capable of getting along with supervisors and coworkers with only minor conflicts; and would do better in a job that did not require frequent contact with coworkers. *See* R. 69, 87–88. Finally, they

4

found that Franco Sanchez would be suitable for work that does not require changing tasks from day to day, but rather has a fairly regular set of job duties and expectations. *See* R. 69–70, 88–89.

The ALJ determined that the reviewing psychologists' findings were persuasive as to the paragraph B criteria but only somewhat persuasive with respect to the functional capacity portions of their findings. *See* R. 24–25. According to the ALJ, the reviewing psychologists' specific functional findings were "not phrased in vocationally relevant terms." R. 25. Kijakazi maintains that the ALJ nevertheless adopted many of the reviewing psychologists' opined limitations into his residual functional capacity assessment. The ALJ determined that Franco Sanchez could perform jobs that were unskilled and involved routine job tasks and instructions; could maintain attention, concentration, persistence, and pace for simple and repetitive tasks for two hours at a time over the workday; could perform jobs having only occasional decision making and changes in work setting; and could have occasional interaction with the public, coworkers, and supervisors. R. 19–20. Thus, while the ALJ did adopt some of the reviewing psychologists' findings, he did not include in the RFC assessment their more restrictive opined limitations that Franco Sanchez could understand, remember, and carry out only two-step commands; could focus enough to complete tasks requiring only two or three steps; may at times have problems with completing a normal workweek; would have some difficulty being around others for an extended period of time; and would have minor conflicts with supervisors and coworkers.

The opined limitations the ALJ declined to adopt without explanation were expressed in vocationally relevant terms and appear consistent with—not contrary to—a finding of disability. For example, the reviewing psychologists found that Franco Sanchez may have

5

problems at times with completing a normal workweek, though not on a frequent basis. Drs. Winston and Bortin opined that Franco Sanchez would miss work much more often. However, the vocational expert testified that "anything greater than one [absence] per month is going to be problematic and, thus, work-preclusive." R. 54. So Franco Sanchez would be disabled if, consistent with the reviewing psychologists' findings, he occasionally missed work. Likewise, the reviewing psychologists found that Franco Sanchez may have minor conflicts with supervisors and coworkers. Bortin opined that Franco Sanchez would likely exhibit verbal outbursts at work several times a week, and the vocational expert testified that employers had "zero tolerance" with threatening workplace conflicts. *See* R. 55–56.

In sum, the record does not contain any significant evidence contrary to the treating providers' well-supported opinions. Because Kijakazi has not clearly established that I committed a manifest error of law in remanding with instructions to award benefits, the court **DENIES** her Rule 59(e) motion to alter or amend judgment, ECF No. 19.

**SO ORDERED** this 17th day of April, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge